BECKER *v.* DETROIT SAVINGS BANK.

1. MORTGAGES—MORATORIUM ACT—ACTIONS ON NOTES.
   Mortgage moratorium act affords no relief to mortgagors sued at law on mortgage notes (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [Ex. Sess.]).

2. STATUTES—COURTS—EXPLICIT DECLARATION OF LEGISLATURE—CONCURRENT RESOLUTION.
   Even though the literal interpretation of a statute should defeat the very purposes of the enactment, still the explicit declaration therein contained is the law binding upon the courts, not a concurrent resolution with reference thereto which was not passed as a bill (Const. 1908, art. 5, § 19, Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [Ex. Sess.], Senate Concurrent Resolution No. 59, 1933, Senate Journal, pp. 1624, 1628).

Appeal from Wayne; Webster (Clyde I.), J. Submitted October 10, 1934. (Docket No. 77, Calendar No. 38,023.) Decided December 10, 1934.

Bill by William H. Becker and others against Detroit Savings Bank to restrain an action at law on a mortgage note. Bill dismissed. Plaintiffs appeal. Affirmed.

*David I. Hubar* (*Milton M. Maddin,* of counsel), for plaintiffs.

*Miller, Canfield, Paddock & Stone* (*George D. Miller,* of counsel), for defendant.

BUSHNELL, J. A mortgage for $28,000 dated November 30, 1931, is secured by a building in the city of Detroit consisting of 27 apartments. The interest payments being in default and no moneys having been paid on the principal, defendant sued plain-

tiffs on the mortgage note for the full amount of principal and past due interest.

Seeking the aid of the mortgage moratorium statute (Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 [Ex. Sess.]), and a concurrent resolution of the legislature (Senate concurrent resolution No. 59, Michigan Senate Journal, regular session of 1933, pp. 1624, 1628), plaintiffs filed a bill in chancery and secured a restraining order. Upon hearing of plaintiffs' order to show cause and defendant's motion to dismiss, the trial judge, after taking proofs, ordered the bill of complaint dismissed.

The concurrent resolution reads in part:

"Whereas, It was the intention of the legislature by the enactment of said bill to give relief to owners of real estate, particularly homes, so that they would not be lost through mortgage foreclosures, and

"Whereas, Many holders of mortgages are circumventing the spirit of the said law by bringing suit against the home owners on the notes secured by such mortgages, now therefore be it

"Resolved, That the legislative intent in passing said law was to protect home owners during the existence of the present economic emergency and to give such home owners a reasonable time to meet their obligations and to save them from the expense and embarrassment of litigation, and be it further

"Resolved, That it is the sense of the legislature that the circuit courts of this State and the superior court of the city of Grand Rapids should grant continuances in all cases where home owners are sued on such notes in the same manner as continuances are granted under the Bischoff-Munshaw bill."

Although the language of the act does not embrace actions at law brought upon mortgage notes, it is argued that the trial court should have construed

the statute in the light of the intent of the legislature as expressed in its resolution.

The applicable portion of our Constitution is:

"All legislation by the legislature shall be by bill and may originate in either house of the legislature." Article 5, § 19, Constitution of Michigan, 1908.

The Constitution of California, 1879, reads:

"No law shall be passed except by bill." Article 4, § 15.

The California legislature adopted a concurrent resolution authorizing the governor to fix the compensation for services of plaintiff in *Mullan* v. *State,* 114 Cal. 578 (46 Pac. 670, 34 L. R. A. 262). The court said:

"And section 15 of the same article provides that 'no law shall be passed except by bill.' That the action of governor and legislature did not constitute the enactment of a 'law' within the purview of the Constitution is quite obvious. It is, in fact, not contended that the resolution is to be regarded as a 'bill' within the meaning of the Constitution, but it is urged that the words 'express authority of law,' as there used, have a broader signification than that of a valid statute law enacted with all the formalities requisite in the case of a bill, and that it was competent for the legislature to ratify the act of the governor in assuming to appoint the plaintiff by a resolution such as the one here quoted, and that such action constitutes 'express authority of law.' But we are unable to coincide in this view. The language of the Constitution is in itself a complete answer to the proposition. It provides in express terms that there shall be but one mode of enacting a 'law' thereunder, and that mode is, the exclusive measure of the power of the legislature in that regard. A mere resolution, therefore, is not a competent method of expressing the legislative will,

where that expression is to have the force of law, and bind others than the members of the house or houses adopting it. The fact that it may have been intended to subserve such purpose can make no difference. The requirements of the Constitution are not met by that method of legislation. 'Nothing becomes law simply and solely because men who possess the legislative power will that it shall be, unless they express their determination to that effect, in the mode pointed out by the instrument which invests them with the power, and under all the forms which that instrument has rendered essential.' Cooley; Constitutional Limitations, p. 155, chap. 6. It is true, as contended, that legislation for certain limited purposes by means of resolutions or legislative orders is in use to some extent in certain of the States and in congress. But it will be found that in most, if not all, instances, it is under a Constitution which either expressly recognizes it, as does the Constitution of the United States, or one which at least does not forbid it. And it will be usually found to take the form of a resolution requiring the assent of the executive to give it effect. In congress this form of legislation is regarded as a bill, and treated with the same formalities. Even if this mode of legislation were competent under our Constitution, the resolution relied upon would not arise to the dignity of law, since it lacks the essential of executive approval. In *Collier & Cleveland Lithographing Co.* v. *Henderson,* 18 Col. 259 (32 Pac. 417), under a Constitution containing restrictions, similar to those found in that of California, it was held that a resolution adopted by both houses of the legislature for a purpose not dissimilar in principle from that intended to be subserved by the one under consideration was not 'a law of the State,' as it 'was not passed by bill.' (And see *People* v. *Toal,* 85 Cal. 333 [24 Pac. 603].)''

''Joint resolutions    *    *    *    are often used to express the legislative will in cases not requiring a general law.'' *Hoyt* v. *Sprague,* 103 U. S. 613, 636.

We are controlled by our quotation from Black on Interpretation of Laws (1st Ed.), p. 36, in *People* v. *Lowell,* 250 Mich. 349, 359:

"Even though the court should be convinced that some other meaning was really intended by the law-making power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it."

The statute affords no relief to mortgagors who are sued at law on mortgage notes, and while the resolution of the legislature is entitled to respectful consideration, it is not law and courts are bound by the law.

The decree dismissing the bill of complaint is affirmed, with costs to appellee.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred.