THE STARBOARD TACK CORPORATION v MEISTER

Docket No. 50444. Submitted November 14, 1980, at Detroit.—Decided February 4, 1981.

George E. Meister entered into a purchase agreement with The Starboard Tack Corporation and The Starboard Tack of Farmington whereby Meister was to purchase the Starboard Tack Restaurant in Farmington Hills, Michigan. A part of this December 12, 1977, purchase agreement was the provision that Meister would deposit $35,000 in escrow with Northwood Business Brokers. By a separate agreement dated December 15, 1977, but allegedly executed on January 10, 1978, the parties agreed to have A. Jerome Allen, Meister's attorney, hold and retain the escrow deposit. This escrow agreement included an acknowledgment that Allen had received the sum of $35,000 and had deposited the same in an account maintained by Allen at the City National Bank; however, the agreement also provided that "a copy of Meister's check, or payment, is attached hereto and made a part hereof". The escrow agreement further provided that if Meister defaulted on the purchase agreement, Allen was required to deliver the balance of any escrow funds to The Starboard Tack Corporation and The Starboard Tack of Farmington. Meister's check to Allen, which purportedly was the one which was referred to in the escrow agreement, was dated January 29, 1978.

Meister failed to comply with the purchase agreement and was declared to be in default. The Starboard Tack Corporation and The Starboard Tack of Farmington commenced an action in Oakland Circuit Court against Meister and Allen, Allen having refused to pay the escrow funds to plaintiffs because Meister's post-dated check had been drawn on an account which had insufficient funds to cover that check. A default judgment was entered against Meister. By way of an affirma-

REFERENCES FOR POINTS IN HEADNOTES
[1] 28 Am Jur 2d, Escrow § 21 et seq.
[2] 28 Am Jur 2d, Escrow § 3 et seq.
[3] 28 Am Jur 2d, Escrow § 4.
[4] 28 Am Jur 2d, Escrow § 11.
[5] 28 Am Jur 2d, Estoppel and Waiver §§ 76, 77.

tive defense, Allen alleged that his only obligation was to tender Meister's check to the bank, which he alleged that he had done. Plaintiffs moved for a summary judgment on the basis that there was no genuine issue as to any material fact and that Allen had failed to state a valid defense. James S. Thorburn, J., granted plaintiffs' motion for summary judgment. Allen appeals. *Held:*

1. Assuming that Allen can prove that the plaintiffs knew that the money in dispute was not on deposit in the bank at the time of the execution of the escrow agreement, he has stated a valid defense to plaintiffs' claim that he is liable for payment of the escrow funds represented by Meister's post-dated check.

2. Allen's duties as the escrow agent were fixed by the provisions of the escrow agreement. Escrow agreements, as with all contracts, must be construed with the object of effecting the intent of the parties. Where an ambiguity exists in an agreement, the surrounding facts and circumstances may be considered for the purpose of aiding in the interpretation of the intent of the parties to the contract.

3. An agent acting pursuant to an escrow agreement which incorporates by reference a copy of a post-dated check is not the guarantor of the amounts represented by that check. Where an escrow agreement indicates that the money is on deposit at a bank but also contains a provision which indicates that the escrow agent is merely holding a post-dated check, the incorporation of such post-dated check into the escrow agreement rebuts the effect of the language of the agreement that the money is, in fact, being held on deposit in a bank.

4. Since Allen asserts that plaintiffs knew that all he held was the post-dated check, in the absence of proofs by plaintiffs that Allen by his words, conduct or inaction induced plaintiffs to believe that he, in fact, was holding something other than that check and that plaintiffs relied upon such words, conduct or inaction to their detriment, Allen is not estopped on equitable grounds from asserting that the check was worthless.

Reversed and remanded.

1. Escrows — Escrow Agreements — Pleading — Summary Judgments — Court Rules.

An escrow agent states a valid defense sufficient to resist the granting of summary judgment on the basis of the failure to state a valid defense in an action against the escrow agent to recover the funds allegedly held in escrow where, despite a

recital in the escrow agreement that the escrow funds are on deposit in a bank, the escrow agent alleges that he can show that the party seeking recovery of the escrow funds knew at the time of the execution of the escrow agreement that the escrow funds were not on deposit in a bank and that the escrow agent held only a post-dated check (GCR 1963, 117.2[2]).

2. ESCROWS — ESCROW AGREEMENTS — DUTIES AND LIABILITIES — CONTRACTS.

The duties and liabilities of an escrow agent are those set forth in the escrow agreement.

3. ESCROWS — ESCROW AGREEMENTS — CONTRACTS — INTERPRETATION OF CONTRACTS.

An escrow agreement, as with all contracts, must be construed with the object of effecting the intent of the parties, and, where the contract is ambiguous, surrounding facts and circumstances may be considered for the purpose of aiding in the interpretation of the intent of the parties to a contract.

4. ESCROWS — ESCROW AGREEMENTS — POST-DATED CHECKS — GUARANTORS.

An agent acting pursuant to an escrow agreement which indicates that certain funds are on deposit at a bank and incorporates by reference a copy of a post-dated check executed by the person required to place funds in escrow is an escrow agent only, not a guarantor of the amounts represented by the check, since the idea that the money is on deposit is rebutted by the incorporation of a copy of the post-dated check as part of the escrow agreement.

5. ESTOPPEL — EQUITY — DEFENSES — PROOFS.

A plaintiff, in order to assert the doctrine of equitable estoppel with respect to a defense raised by a defendant, must establish that the defendant by his words, conduct or inaction induced the plaintiff to believe that certain facts existed and that plaintiff justifiably relied on defendant's words, conduct or inaction to plaintiff's detriment.

*Murphy, Fregolle, Kargenian & Odom,* for plaintiffs.

*Collins & Einhorn, P.C.* (by *Clayton F. Farrell),* for defendant.

Before: BRONSON, P.J., and J. H. GILLIS and CY-
NAR, JJ.

BRONSON, P.J. Plaintiffs filed a complaint in the
Oakland County Circuit Court alleging that defen-
dant, A. Jerome Allen, breached the terms of an
escrow agreement.[1] The escrow agreement arose
out of negotiations concerning the sale of the
Starboard Tack Restaurant in Farmington Hills.
George Meister and plaintiffs agreed on December
12, 1977, to the terms of an offer to purchase,
including a provision that Meister would deposit
$35,000 in escrow with Northwood Business Bro-
kers. In a subsequent written agreement dated
December 15, 1977,[2] the parties agreed to have
Meister's attorney, defendant, hold and retain the
deposit.

By the terms of the escrow agreement, if Meis-
ter defaulted on the contract of sale, defendant
was required to deliver the balance to the plain-
tiffs on demand. The agreement provided in rele-
vant part:

"A. JEROME ALLEN, hereby acknowledges that he
has received the sum of THIRTY FIVE THOUSAND
DOLLARS ($35,000.00) from GEORGE MEISTER, the
purchaser named and set forth in a certain Offer to
Purchase between MEISTER and THE STARBOARD
TACK OF FARMINGTON, dated December 12, 1977,
and that same is on deposit in an account maintained
by ALLEN AT City National Bank, being Account
No. _____.

"Further, that a copy of MEISTER'S check, or pay-
ment, is attached hereto and made a part hereof."

[1] Any references to "defendant" in this opinion refer to A. Jerome
Allen only.

[2] Although the agreement was dated December 15, 1977, plaintiffs
aver that it was actually signed on January 10, 1978.

Plaintiffs alleged that prior to January 28, 1978, they became aware that Meister, while acting as manager of the Starboard Tack of Farmington, mismanaged and misappropriated funds and also failed to comply with the agreements between the parties. As a result, plaintiffs declared Meister in default. A default judgment was entered against him on May 16, 1979. Thereafter, plaintiffs demanded payment of the funds "on deposit" with defendant. Defendant refused to pay, and the instant action was instituted.

In his answer, Allen alleged as an affirmative defense that he was only under an obligation to tender Meister's check to the bank. He further averred that he complied with this duty, but that the check was not accepted because Meister did not have sufficient funds in his account at Security Bank and Trust Company, upon whom the check was drawn. Attached to his affirmative defenses, he included a copy of the check purportedly given to him by Meister, dated January 29, 1978. If this was, in fact, a copy of the check given him by Meister when the escrow agreement was executed, all parties to the contract would have known that the $35,000 was not "on deposit". In his response to plaintiffs' interrogatories, defendant specifically stated that they knew the $35,000 was not "on deposit" when the escrow agreement was executed.

On January 9, 1980, the circuit court granted plaintiffs' motion for summary judgment on the bases that there was no genuine issue as to any material fact and that defendant had failed to state a valid defense. GCR 1963, 117.2(2), (3). An order to that effect was entered on January 23, 1980. Defendant's motion for a rehearing was denied, and he appeals as of right.

The question we must resolve is, assuming that

defendant can prove the plaintiffs knew the money in dispute was not on deposit at the time the escrow agreement was executed, has he stated a valid defense to the action pursuant to GCR 1963, 117.2(2)? We answer this question of first impression in Michigan in the affirmative.

The duties and liabilities imposed upon an escrow agent are those set forth in the escrow agreement. 30A CJS, Escrows, § 8, p 991. See, also, *City Bank & Trust Co v Kwaske Brothers Construction Co,* 69 Mich App 271, 274; 244 NW2d 443 (1976). The trial court concluded that the representation in the escrow agreement that $35,000 was "on deposit" in the City National Bank created a contractual obligation to pay over this amount to plaintiffs in case of Meister's default.

In this case there is an ambiguity in the escrow contract in that it also provides that "a copy of Meister's check" is attached to the agreement and made a part thereof. All contracts must be construed with the object of effecting the intent of the parties. *Piasecki v Fidelity Corp of Michigan,* 339 Mich 328, 337; 63 NW2d 671 (1954), *Burland, Reiss, Murphy & Mosher, Inc v Schmidt,* 78 Mich App 670, 674; 261 NW2d 540 (1977). Furthermore, where the contract is ambiguous, surrounding facts and circumstances may be considered for purposes of aiding construction. *Shirey v Camden,* 314 Mich 128, 130; 22 NW2d 98 (1946), *Wistrand v Bese,* 23 Mich App 423, 428; 178 NW2d 826 (1970), *lv den* 383 Mich 816 (1970).

While the phrase that money is "on deposit" in an escrow agreement, by itself, is properly construed to mean that the funds are available to be withdrawn, this conclusion is not as readily apparent where the parties have explicitly made a reputedly post-dated check part of the contract. The

term "is on deposit" refers to a current state of affairs which, if Allen is believed, was not in fact true and was known by the plaintiffs not to be true. Had the parties actually intended defendant to be the guarantor of the check we would have expected language far better designed to express this intention than a false recital of fact.[3] The idea that the money was "on account" is directly rebutted by the copy of Meister's check made part of the agreement. In our opinion, the agreement merely made Allen an escrow agent, not an escrow agent and guarantor of Meister's check.

The decisions relied on by plaintiffs from our sister states are all distinguishable.

In *Mefford v Security Title Ins Co,* 199 Cal App 2d 578; 18 Cal Rptr 877 (1962), defendant escrow agent accepted a $10,000 check as the corpus of the escrow payment. This fact was unbeknown to plaintiffs. Thereafter, defendant informed plaintiffs that the $10,000 was "on deposit". The court held that defendant was estopped to deny that the sum of $10,000 was in fact on deposit by this representation. However, this aspect of the case was never really in dispute. Defendant admitted that it had assumed responsibility for payment of the check by its statement to plaintiffs. The salient distinction between this case and *Mefford* is that here defendant avers that plaintiffs knew that all he held was a check for the $35,000. See, also, *Katleman v US Communities, Inc,* 197 Neb 443; 249 NW2d 898 (1977) (escrow agent liable where it represents to plaintiff that a check for $25,000 has

---

[3] Plaintiffs' answers to defendant's interrogatories show that the escrow agreement was prepared by the plaintiffs' attorney. This fact lends further support for our position, since a contract is to be construed strictly against its drafter. *Keller v Paulos Land Co,* 381 Mich 355, 362; 161 NW2d 569 (1968), *Bruno v Detroit Institute of Technology,* 51 Mich App 593, 596; 215 NW2d 745 (1974).

been deposited on account when, in fact, the check had not been deposited and ultimately became valueless), *Wade v Lake County Title Co,* 6 Cal App 3d 824; 86 Cal Rptr 182 (1970) (escrow agent who held vendees' check for $15,000 without notifying vendors, who believed it had been deposited in the bank, liable for the $15,000 when the check becomes worthless due to vendees' bankruptcy).

All of the above cases proceed on estoppel theories. To establish equitable estoppel, plaintiffs must show that the defendant by his words, conduct, or inaction induced them to believe certain facts existed and that they justifiably relied on defendant's words, conduct or inaction to their detriment. *American Electrical Steel Co v Scarpace,* 399 Mich 306, 308; 249 NW2d 70 (1976), *Conel Development, Inc v River Rouge Savings Bank,* 84 Mich App 415, 422-433; 269 NW2d 621 (1978), *lv den* 406 Mich 910 (1979). If, in fact, plaintiffs knew that all defendant held was Meister's uncleared check at the time the escrow agreement was executed, Allen is not estopped from asserting the defense that the check was worthless. In such circumstances, any reliance would be on Meister's representations and not on representations made by Allen.

We find this case much closer to the facts of *Williams v Northside Realty Associates, Inc,* 116 Ga App 253; 157 SE2d 166 (1967), than to any of the cases cited by plaintiffs. There, plaintiff brought suit against an ascrow agent for breach of contract premised on the agent's failure to tender the balance of earnest money held in escrow. As here, the payment into escrow was by check. The Georgia court held:

"While the defendants, had they in fact received $5,000 as alleged in the petition, would have been

directly liable to the plaintiff for the overage after deducting the real estate commission, and while the purchaser, if his refusal to go through with the transaction was wrongful, would be liable upon the check *(G V Corp v Bob Todd Realty Co,* 102 Ga App 190 (115 SE2d 611)], no breach of contract is shown by the brokers to the seller in failing to make an attempt to convert the check into cash, especially since all parties were informed that the earnest money was paid in the form of a check (this appears on the face of the sale contract) and no instructions were given to the brokers, acting in their capacity of a depository, to assure by certification or otherwise that it would be good at the time of the closing of the sale contract." *Id.,* 254.

As noted above, on the facts of this case, we reject a construction that the parties' use of the term "is on deposit" was a guarantee by defendant of Meister's check.

Reversed and remanded for proceedings consistent with this opinion.